UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT BLAINE MILLER,

    Plaintiff,

v.                                                    Case No. 8:04-cv-1981-T-24TBM

PASCO COUNTY, FLORIDA,

    Defendant.
_____/

## ORDER

This cause comes before the Court for consideration of Defendant Pasco County Sheriff's Department's[1] motion for summary judgment (Doc. No. 47, filed September 30, 2005).[2] Plaintiff's response was due by October 24, 2005. To date, Plaintiff has not filed a response.[3]

**I.**     **Procedural History**

On August 31, 2004, Plaintiff filed a two count complaint against Defendant Pasco County seeking damages for constitutional violations pursuant to 42 U.S.C. §1983 (Count I), as well as a state law claim for negligence (Count II) in connection with an alleged assault and battery which occurred on or about November 16, 1999, while Plaintiff was confined by and in

---

[1] Through Bob White, in his official capacity as Sheriff of Pasco County, Florida.

[2] On October 21, 2005, this Court entered in Order in which it granted Defendant Pasco County's motion to join in and adopt Defendant Pasco County Sheriff's Department's motion for summary judgment (Doc. No. 51).

[3] On October 28, 2005, this Court entered an Order that Plaintiff shall have until November 18, 2005, to respond to the motion for summary judgment (Doc. No. 52). On October 31, 2005, Plaintiff was mailed a copy of the notice of electronic filing and said notice advised Plaintiff of the November 18, 2005, deadline.

the care of Defendant Pasco County. On January 6, 2005, this Court entered an Order in which it denied Defendant Pasco County's motion to dismiss Plaintiff's complaint in its entirety as time-barred by Florida's four year statute of limitations since the parties raised issues beyond the scope of a motion to dismiss (Doc. No. 14). However, the Court granted Defendant Pasco County's motion to strike Plaintiff's request for punitive damages and expert fees as to Count I (Doc. No. 14).

On February 16, 2005, with leave of the Court, Plaintiff filed his Amended Complaint to include Defendant Pasco County Sheriff's Department (Doc. No. 21).[4] On June 6, 2005, Defendant Pasco County Sheriff's Department[5] filed a Counterclaim against Plaintiff for costs of incarceration pursuant to FLA. STAT. §960.293 (Doc. No. 34).[6] Defendants now move for summary judgment on Plaintiff's Amended Complaint. Defendant Pasco County Sheriff's Department seeks summary judgment on its counterclaim.

## II.   Factual Background

On June 5, 1996, Plaintiff was arrested by the Pasco County Sheriff's Office for robbery

---

[4]Defendant Pasco County Sheriff's Department contends the correct defendant is the current Sheriff of Pasco County, Bob White, in his official capacity as Sheriff of Pasco County Florida and that "[a]s a matter of law, the 'Pasco County Sheriff's Department' is not an entity capable of being sued" (Doc. No. 34). However, the Court notes that it will not need to examine who is the proper party in this case since, irregardless of how it is couched, "'an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.'" Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1115 (11th Cir. 2005)(citing Kentucky v. Graham, 473 U.S. 159, 165- 66 (1985)(citations and internal quotation marks omitted)).

[5]Through Bob White, in his official capacity as Sheriff of Pasco County, Florida.

[6]The Court notes that Plaintiff never filed a response to Defendant Pasco County Sheriff's Department's Counterclaim.

(Doc. No. 48, Anderson Aff., ¶ 5).[7]  On October 4, 1999, Plaintiff was arrested by the Pasco Sheriff's Office for battery on a law enforcement officer, resisting arrest with violence and violation of probation.  After this arrest, Plaintiff was processed at the Pasco County Detention Center (Doc. No. 48, Anderson Aff., ¶6).  On November 16, 1999, Plaintiff was found to be in violation of his probation/community control and was sentenced to a term of eight (8) months and committed to the custody of the Sheriff of Pasco County, Florida.  Plaintiff was incarcerated at the Pasco Detention Center from October 4, 1999 to March 22, 2000 (Doc. No. 48, Anderson Aff., ¶7 and Exhibit A thereto).

Plaintiff alleges that on or about November 16, 1999[8], while Plaintiff was under the care and supervision of Defendants in the Pasco County Jail[9], Plaintiff was assaulted and battered by other inmates (Doc. No. 21, Amended Complaint, ¶8)("the 1999 attack").  Immediately after the 1999 attack, Plaintiff advised Officer Cortes[10] that other inmates had slammed him into a desk, that he had been injured, and that his back was hurting badly (Doc. No. 48, Plaintiff's Depo., pp. 36 - 37).  Officer Cortes had a nurse examine Plaintiff (Doc. No. 48, Plaintiff's Depo., p. 37) and Plaintiff refused to go to the hospital for further medical treatment (Doc. No. 48, Plaintiff's Depo., Exh. 2).

---

[7]Case No. 96-01684CFAWS.

[8]Plaintiff stated "I got beat up" on a Medical Request Form dated November 8, 1999 (Doc. No. 48, Plaintiff's Depo., Exh. 1).  Likewise, on November 8, 1999, Plaintiff signed a form in which he indicated he refused to go to the hospital for treatment (Doc. No. 48, Plaintiff's Depo., Exh. 2).

[9]Plaintiff was incarcerated at the Pasco Detention Center from October 4, 1999 to March 22, 2000 (Doc. No. 48, Anderson Aff., ¶7 and Exhibit A thereto).

[10]A Pasco County Sheriff's Office corrections officer on duty.

3

Plaintiff states in his deposition that after the attack Officer Cortes asked him whether he wished to press charges against his assailants. Plaintiff further states in his deposition that when he advised Officer Cortes that he wished to press charges against the assailants, Officer Cortes informed Plaintiff that there was a chance that Plaintiff could be "stabbed" or "shanked" if he pressed charges (Doc. No. 48, Plaintiff's Depo., p. 35). Plaintiff states in his deposition that he believed that the reason Officer Cortes said this, and the reason he had been attacked, was because Officer Cortes had not been at his post (Doc. No. 48, Plaintiff's Depo., pp. 35 - 38, 40, 46 and 104). Plaintiff signed waivers of prosecution authorizing the Pasco County Sheriff's Office not to prosecute his assailants. The waivers contain the language "[a]lso, I hereby release the Sheriff's Office of any responsibility regarding this complaint and I request that any further investigation not be pursued" (Doc. No. 48, Plaintiff's Depo., pp. 44 - 45 and Exhibit 3 thereto).

Plaintiff states in his deposition that he did not know his assailants prior to the attack nor had he been informed that the assailants were dangerous (Doc. No. 48, Plaintiff's Depo., pp. 100 - 101). Plaintiff states in his deposition that he did not know whether any of the corrections officers at the Pasco County Detention Center, including Officer Cortes, had prior knowledge of any violent tendencies of his assailants before the attack occurred (Doc. No. 48, Plaintiff's Depo., pp. 100 - 101).

Plaintiff states in his deposition that on or about December 21, 1999, he was seen by a jail doctor and that he told the doctor that his back was bothering him (Doc. No. 48, Plaintiff's Depo., pp. 52 - 53). Plaintiff acknowledges that as a result he was sent for x-rays of his spine (Doc. No. 48, Plaintiff's Depo., p. 53). Plaintiff states in his deposition that, after reviewing the x-rays of his spine, the jail doctor told Plaintiff that Plaintiff had slight arthritis (Doc. No. 48,

Plaintiff's Depo., p. 53). Plaintiff testified in his deposition that, at the time, Plaintiff believed that his injuries were more serious than the jail doctor indicated and believed the jail doctor downplayed the extent of Plaintiff's back injury (Doc. No. 48, Plaintiff's Depo., pp. 53 - 54 and 109 - 110). Plaintiff was released from the Pasco County Detention Center on or about March 22, 2000 (Doc. No. 48, Anderson Aff., ¶7). Despite all of the above, Plaintiff alleges that he did not learn of his injuries until July 2003 (Doc. No. 21, Amended Complaint, Exh. 1).

### III.    Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. Id. at 325. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim. See id. When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial. Id. at 324.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the

Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989); Samples on behalf of Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). The Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

WSB-TV v. Lee, 842 F.2d 1266, 1270 (11th Cir. 1988).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. See Augusta Iron & Steel Works v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

**IV.     Discussion**

Defendants assert they are entitled to summary judgment on both Plaintiff's claims in that the claims are time barred by the applicable statute of limitations. Further, with respect to Count I, Defendants assert Plaintiff has failed to establish a constitutional violation or the existence of any custom or policy that was the moving force behind the constitutional violation. Upon review

6

of the record and the pleadings, the Court finds that there is no genuine issue as to any material fact and that Defendants are entitled to summary judgment as a matter of law with respect to Plaintiff's claims.[11]

### A. Plaintiff's §1983 Claim (Count I)

#### i. Statute of Limitations

Defendants argue that Plaintiff's claim under 42 U.S.C. §1983 (Count I) is time-barred by Florida's four year statute of limitations. This Court agrees. Florida's four year statute of limitations applies to claims for deprivation of rights under 42 U.S.C. §1983. See City of Hialeah v. Rojas, 311 F.3d 1096, 1103 n.2 (11th Cir. 2002)(citing Burton v. City of Belle Glade, 178 F. 3d 1175, 1188 (11th Cir. 1999)); see also FLA. STAT. §95.11(3)(a). The accrual of a §1983 claim is a question of federal law and the statute of limitations "does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." Mullinax v. McElhenney, 817 F.2d 711, 716 (11th Cir. 1987).

Here, the evidence before the Court clearly indicates that Plaintiff knew or should have known of the facts which would support his §1983 claim in 1999. Specifically, immediately after the 1999 attack, Plaintiff knew he had been injured and that his back was hurting badly (Doc. No. 48, Plaintiff's Depo., pp. 36 - 37). Plaintiff stated in his deposition that he believed that if Officer Cortes has been at his post, the attack may not have occurred (Doc. No. 48,

---

[11]Paragraph 9(c) of the Case Management and Scheduling Order states "[f]ailure to respond to a motion for summary judgment shall indicate there is no opposition to the motion and may result in final judgment being entered without a trial or other proceeding" (Doc. No. 15). Nonetheless, the Court will briefly address the merits of the motion for summary judgment.

Plaintiff's Depo., p. 104). On or about December 21, 1999, Plaintiff believed that his injuries were more serious than the jail doctor indicated and believed the jail doctor downplayed the extent of Plaintiff's back injury (Doc. No. 48, Plaintiff's Depo., pp. 53 - 54 and 109- 110). Any claim Plaintiff may have had for deprivation of rights under §1983 accrued, at the very latest, on December 21, 1999. Plaintiff did not file his complaint against Defendant Pasco County until August 31, 2004, and his Amended Complaint against Defendant Pasco County Sheriff's Department until February 16, 2005. Accordingly, the Court finds that Plaintiff's claim for damages for constitutional violations pursuant to §1983 is barred by Florida's four year statute of limitations and Defendants are entitled to summary judgment on Count I.

### ii. Violation of Plaintiff's Constitutional Rights

Plaintiff alleges that Defendants violated his constitutional rights, specifically "his clearly established constitutional right to protection from cruel and unusual punishment" by failing to prevent other inmates from attacking him while under the care and supervision of Defendants (Doc. No. 21, Amended Complaint, ¶¶ 8 and 14)[12].

### a. Plaintiff Has Failed to Establish the Existence of a Constitutional Violation

Prison inmates have a constitutional right to be protected from physical assault by other inmates. See Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986). However, this does not mean that a constitutional violation occurs whenever an inmate is injured by another inmate. See id. Instead, an inmate's Eighth Amendment right is violated when a jail official is deliberately

---

[12]To the extent that Plaintiff is claiming Defendants withheld medical treatment as a basis for his §1983 claim, the Court finds this allegation without merit since Plaintiff saw a nurse immediately after the 1999 attack and refused to go to the hospital for further medical treatment (Doc. No. 48, Plaintiff's Depo., Exhs. 1 and 2).

indifferent to a substantial risk of serious harm to an inmate.  See Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995).  Therefore, to survive summary judgment on a §1983 Eighth Amendment claim, a plaintiff must produce sufficient evidence of: (1) a substantial risk of serious harm; (2) defendants' deliberate indifference to that risk; and (3) causation.  See id.

There is no evidence in the record that, prior to the 1999 attack, there was a substantial risk that Plaintiff would suffer serious harm while incarcerated at the Pasco County Detention Center.  Furthermore, there is no evidence in the record that prior to 1999 attack, corrections officers at the Pasco County Detention Center were aware or should have been aware of a known danger to Plaintiff and were deliberately indifferent to it.  See Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990).   Accordingly, Plaintiff has failed to establish the existence of a constitutional violation, and Defendants are entitled to summary judgment on Count I.

   **b.**  **Plaintiff Has Failed to Establish the Existence of a Custom or Policy That Was the Moving Force Behind the Constitutional Violation**

Even assuming Plaintiff had established the existence of a constitutional violation, Plaintiff has failed to establish the existence of a custom or policy that was the moving force behind the constitutional violation.  Specifically, since respondeat superior or vicarious liability will not attach under §1983, local governments may be held liable under §1983 only for the execution of a governmental policy or custom.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  Clearly, a local government employee who acted according to a formal written policy of the local government (such as an ordinance, regulation, etc.) would be acting so as to render the local government potentially liable for his or her actions.  In this case there is no evidence that the alleged violations resulted from a formal written policy of the Defendants.

However, because "[a local government] must be held accountable for more than its officially-codified policies," Van Ooteghem v. Gray, 628 F.2d 488, 494 (5th Cir. 1980),[13] "the court should examine not only the relevant positive law, including ordinances, rules, and regulations, but also the relevant customs and practices having the force of law." Mandel v. Doe, 888 F.2d 783, 793 (11th Cir. 1989).  To prove §1983 liability against Defendants based on a *de facto* custom or policy, Plaintiff must establish a widespread practice that, although not authorized by written law or express policy, "is so permanent and well settled as to constitute a 'custom or usage with the force of law.'"  Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1481 (11th Cir. 1991) (citations omitted).  "In other words, a longstanding and widespread practice is deemed authorized by the policy making officials because they must have known about it but failed to stop it."  Id.  There is no evidence in this case that could lead a jury to believe that the alleged constitutional violation stemmed from a widespread practice of depriving individuals of their constitutional rights.  Accordingly, for this reason as well as the previous reasons, Defendants are entitled to summary judgment on Count I..

**B.     Plaintiff's Pendent State Claim For Negligence (Count II)**

Plaintiff alleges that Defendants negligently failed to exercise due care for his safety and failed to give him sufficient medical care after the attack.  Florida Statute. §95.11(3)(a) requires that an action founded on negligence be commenced within four years of the injury.  A cause of action for negligence does not accrue until "the existence of a redressable harm or injury has been established and the injured party knows or should know of either the injury or the negligent

---

[13]Decisions of the former Fifth Circuit filed prior to October 1, 1981 constitute binding precedent in the Eleventh Circuit.  See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc).

act." Peat, Markwick, Mitchell & Co. v. Lane, 565 So.2d 1323, 1325 (Fla. 1990).

Here the evidence before the Court clearly indicates that Plaintiff knew or should have known of both a redressible harm and negligent act as of 1999. Immediately after the attack, Plaintiff knew he had been injured and that his back was hurting badly (Doc. No. 48, Plaintiff's Depo., pp. 36 - 37). Plaintiff stated in his deposition that he believed that if Officer Cortes has been at his post, the attack may not have occurred (Doc. No. 48, Plaintiff's Depo., pg. 104). On or about December 21, 1999, Plaintiff believed that his injuries were more serious than the jail doctor indicated and believed the jail doctor downplayed the extent of Plaintiff's back injury (Doc. No. 48, Plaintiff's Depo., pp. 53 - 54 and 109- 110). Any claim Plaintiff may have had for negligence accrued, at the very latest, on December 21, 1999. Plaintiff did not file his complaint against Defendant Pasco County until August 31, 2004, more than four years after he had knowledge of any alleged negligence. Accordingly, the Court finds that Plaintiff's claim for negligence is barred by the statute of limitations and Defendants are entitled to summary judgment on Count II.

    **C.**    **Counterclaim For Incarceration Costs**

Having disposed of Plaintiff's federal claim, this Court declines to exercise supplemental jurisdiction over Defendant Pasco County Sheriff's Department's pendent state law counterclaim against Plaintiff for costs of incarceration pursuant to FLA. STAT. §960.293, pursuant to 28 U.S.C. § 1367(c)(3). See, e.g., United Mine Workers of America v. Gibbs, 383 U.S. 715, 727 (1966) ("[I]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well.); see also Carnegie-Mellon University v. Cohill, 484 U.S. 343, 349-50 (1988) (reaffirming authority of district courts to refuse to hear pendent state claims when the federal

claim has been disposed of prior to trial).

### V.     Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that:

(1)     Defendant Pasco County Sheriff's Department's motion for summary judgment (Doc. No. 47) is **GRANTED**.

(2)     The Pretrial Conference in the above-captioned matter scheduled for Friday, January 13, 2005 at 8:30 a.m. is hereby cancelled.

(3)     The Court declines to exercise supplemental jurisdiction over Defendant Pasco County Sheriff's Department's pendent state law counterclaim pursuant to 28 U.S.C. § 1367(c)(3).

(4)     The Clerk is directed to enter judgment for Defendants on Plaintiff's claims and to **CLOSE** this case.

**DONE AND ORDERED** at Tampa, Florida, this 4th day of January, 2006.

/s/ Susan C. Bucklew
SUSAN C. BUCKLEW
United States District Judge

Copies to:

Pro Se Plaintiff
Counsel of Record